SUPERIOR COURT
OF THE
STATE OF DELAWARE

VIVIAN L. MEDINILLA
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DE 19801-3733
TELEPHONE (302) 255-0626

Submitted:  January 22, 2025
Decided:  February 5, 2025

Raj Srivatsan, Esquire
Darma Law LLC
3610 Wenark Drive
Newark, DE 19713

Lindsey E. Imbrogno, Esquire
Balaguer Milewski & Imbrogno
2961 Centerville Road
Suite 300
Wilmington, DE 19808

**Re:      Dwayne Milton and Shawna Milton, individually and on behalf of
Minor B. v. Alfred I. duPont Hospital for Children, et al.
<u>C.A. No.: N21C-05-082 VLM</u>**

Counsel:

On January 22, 2025, this Court denied Plaintiffs' motions for disqualification and reargument for the reasons stated on the record.[1]  The Court deferred its ruling on Defendants' Motion for Reargument under Superior Court Civil Rule 59(e).[2] After consideration of all pleadings, for the reasons stated herein, Defendants' Motion is **GRANTED**.

---

[1] D.I. 516.

[2] *See id.  See generally* Defs.' Mot. for Reargument, D.I. 412 ("Defs.' MFR").

## RELEVANT FACTS AND PROCEDURAL HISTORY[3]

This case arises from claims brought by Dwayne Milton and Shawna Milton ("the Miltons" or "Plaintiffs"), on behalf of their minor child, B.M., against Alfred I. duPont Hospital for Children ("Nemours"), Dr. Gina Amoroso, and Lisa Kelly, RN (collectively, "Defendants").[4]

The Complaint initially asserted six counts to include: Defamation, Intentional Infliction of Emotional Distress (IIED), Reckless Infliction of Emotional Distress (RIED), Negligent Infliction of Emotional Distress (NIED), Medical Negligence, and *Respondeat Superior* Against Defendant Nemours.[5] Following Plaintiffs' voluntary dismissal of NIED,[6] the five counts remaining centered on the emotional distress claims (IIED and RIED), defamation, and medical negligence.

The medical negligence claim centers on Plaintiffs' theory that Defendants deviated from the standard of care in evaluating and managing B.M.'s constipation promptly to investigate and manage the issue.[7] Specifically, Plaintiffs allege that Defendants' emphasis on feeding and weight gain delayed proper diagnosis of fecal

---

[3] Unless otherwise noted, this Court's recitation is drawn from Plaintiff's Complaint ("Compl.") and all documents the parties incorporated by reference. D.I. 1.

[4] *Id.* at 1–2.

[5] *Id.* at 5–10.

[6] *See* D.I. 237.

[7] Defendants' Motion for Partial Summary Judgment ("Defs.' PSJ"), Ex. 13, D.I. 133; D.I. 183, Ex. A. at 2 ("Report of Pls.' Standard of Care Expert").

impaction and necessary disimpaction procedures, which were later addressed by Children Hospital of Philadelphia ("CHOP").[8]  Plaintiffs further allege that Defendants' misdiagnoses of severe malnutrition and failure to thrive led to purportedly false reports to the Division of Family Services ("DFS") and defamatory statements to CHOP.[9]  The Complaint alleges these failures gave rise to their individual claims for emotional distress, defamation, and punitive damages.[10]

Trial was scheduled to begin on July 22, 2024.

### A. DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants moved for partial summary judgment on everything except the medical negligence claim.  Therefore, they sought summary judgment as to the emotional distress, defamation, and Plaintiffs' pursuit of punitive damages.

As to the emotional distress claims, Defendants argued for summary judgment due to lack of an expert opinion.[11]  The Court agreed and granted partial summary judgment in favor of Defendants on the IIED and RIED claims.[12]  On June 5, 2024, Plaintiffs filed a Motion for Reargument challenging the Court's dismissal of the

---

[8] Report of Pls.' Standard of Care Expert at 2.

[9] *See id.* at 5–6; *see also* Response to Partial Motion to Summary, D.I. 139 at 1–2, 8–9 ("Pls.' Resp. to PSJ").

[10] Compl. at 9–10.

[11] Defs.' PSJ at 8–9.

[12] *See* D.I. 280.

IIED claim,[13] and requested leave to file for interlocutory review should the Court rule against them.[14] The Court denied Plaintiffs' Motion for Reargument as to summary judgment entered on the IIED claim.[15]

As to the Defamation claim, Defendants turned to the immunity provisions found in the Child Abuse Prevention Act ("CAPA") of 16 *Del. C.* §908(a),[16] and argued that, Plaintiffs could not establish willful or wanton misconduct to overcome the presumption of good faith by clear evidence where any reporting to DFS was based on legitimate medical concerns about B.M.'s health and well-being.[17] Defendants further argued that even if CAPA was inapplicable, Plaintiffs failed to establish all necessary elements for defamation as a matter of law.[18] Plaintiffs responded that immunity was inapplicable where Defendants acted with malice and willful misconduct in their treatment of B.M. and in making their reports to DFS.[19] The Court deferred its ruling pending supplemental briefing.

---

[13] Plaintiffs' Motion for Reargument, D.I. 281.

[14] Plaintiffs, again, in this Motion seek leave for interlocutory review. As this request is not ripe, the Court does not address it. *See id.* at 6.

[15] D.I. 410.

[16] Defs.' PSJ at 5–6.

[17] *Id.*

[18] *Id.* at 6–9.

[19] *See* Pls.' Resp. to PSJ at 2.

As to the punitive damage claim, Defendants offered one-paragraph to suggest that no evidence exists to warrant punitive damages as to *all* claims.[20]  The Court allowed the parties to supplement the record, and the parties' respective filings were filed in June and July of 2024.[21]  At the Court's request to better understand their prayer of punitive damages, Plaintiffs filed a supplement "in support of punitive damages under *respondeat superior* against Nemours Institution, and individual agents of Nemours."[22]  In it, Plaintiffs presented fifty-six (56) examples involving Individual Defendants and five other team members "offered in support Plaintiffs' *respondeat superior* claims for punitive damages against [Nemours]."[23]

Eleven days before trial, Plaintiffs sought both a continuance of the trial and asked to reopen discovery.[24]  The Court granted the continuance but denied the request to reopen discovery.[25]  At the request of the parties, no new trial date was scheduled pending the outcome of Defendants' Motion for Partial Summary Judgment on the Defamation claim and issues of punitive damage.

---

[20] *Id.* at 9–10.

[21] *See* D.I. 332, Letter Memorandum on Punitive Damages by Respondeat Superior, D.I. 333 ("Pls.' Punitive Damages Memo"), 341, 357, and 379.

[22] *See* Pls.' Punitive Damages Memo.

[23] *Id.*

[24] *See* D.I. 402, 404. Plaintiffs' counsel indicated an intent to "seek reopening of discovery," and asked leave to "permit supplemental briefing, if necessary, to demonstrate the areas of discovery required, now that time is not an issue which renders some of the arguments made in the seven pending briefings potentially moot."  D.I. 402 at 1.

[25] D.I. 408.

On November 1, 2024, the Court granted partial summary judgment in favor of Defendants on the Defamation claim but not punitive damages.[26]  Defendants had dedicated only one paragraph in the pleading for summary judgment of the punitive damage as to "*all* claims," and submitted supplemental briefings only as to the Defamation claim.[27]  And since their motion was not seeking summary judgment on the medical negligence claim, the Court denied the motion as to punitive damages.[28]  In its 24-page decision (dedicated primarily to whether summary judgment was appropriate on the Defamation claim), the Court merely stated in two paragraphs that "at this juncture" the "medical malpractice and *respondeat superior* claims are not the subject of this Motion."[29]

## B. SUBSEQUENT PROCEDURAL HISTORY

Following that ruling, the only pending matters were several motions *in limine* which had been filed in anticipation of the now lost July 2024 trial date.  On November 8, 2024, the Court held a status conference to inform counsel that it would not be seeking reappointment and the case would need to be reassigned before February 2025.[30]  It asked the parties if they wished for this Court to rule on the

---

[26] Memorandum Opinion at 23–24, D.I. 411 ("Mem. Op.").

[27] *See* Defs.' PSJ at 10; D.I. 332, 379.

[28] Mem. Op. at 23–24.

[29] *Id* at 24.

[30] *See* D.I. 413.

motions *in limine* or wait for the reassignment of another judicial officer.[31] Defendants sought a ruling from this Court but, at Plaintiffs' request to wait until reassignment, the Court agreed to defer the motions *in limine* to the reassigned judge.[32]

During that same conference, the parties then notified the Court that both intended to file their respective motions for reargument under Rule 59.[33] So, the Court indicated it would hear the respective motions before reassignment. Plaintiffs' counsel asked the Court to reassign the case for the new judge to consider the Rule 59 motions—this Court said no.[34] Plaintiffs' counsel also requested an extension of time to file his Rule 59 motion, which the Court granted.[35] Both sides thereafter filed their respective motions for reargument.[36]

The Court scheduled a decisional bench conference for January 6, 2025. Plaintiffs' counsel thereafter sought a continuance and through email and letters, he continued to request that this Court "recuse" itself, and further asked for the Court to provide him with several names of judicial officers for the parties to conduct a

---

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] Defs.' MFR, D.I. 442.

conflict check.[37] The Court denied Plaintiffs' request to "recuse," but granted the request to continue the decisional bench hearing.[38]

On January 7, Plaintiff filed:

> "Plaintiffs' Omnibus Motion for Disqualification and Recusal of Judge Medinilla, and Reassignment of the Above Case, Due to Pervasive Bias Towards Defense and Prejudice Against Plaintiffs, and Failure to Rule in Accordance With the Law and Facts, and Despite Judge Medinilla's Decision on 11/8/2024 to Reassign Case Due to Her Ending Her Term on 2/5/2025, to Avoid Continuing Prejudice."[39]

The Court scheduled oral arguments on all pending motions for January 22, 2025, where it denied Plaintiffs' "Omnibus Motion," and reargument as to the Defamation claim.[40] Due to time restrictions following that 2-hour hearing, it deferred its ruling on Defendants' Motion for Reargument as to punitive damages.[41]

## STANDARD OF REVIEW

A motion for reargument permits a trial court to reconsider its findings of fact, conclusions of law, or judgment.[42] "Delaware law places a heavy burden on a [party]

---

[37] *See* D.I. 492, 496.

[38] D.I. 496.

[39] *See generally* D.I. 499.

[40] Having set forth the reasons for its ruling denying Plaintiffs' Motion seeking disqualification/recusal, and their Motion for Reargument, the Court does not reiterate the bases for its ruling here.

[41] The Court agreed to defer the pending motions *in limine* to the reassigned judge.

[42] *See Ramon v. Ramon*, 963 A.2d 128, 136 (Del. 2008) ("A motion for reargument is the proper device for seeking reconsideration by the Trial Court of its findings of fact, conclusion of law, or judgment.") (internal citations omitted).

seeking relief pursuant to Rule 59."[43]    The moving party has the burden to demonstrate that the Court must correct an error of law or prevent manifest injustice deriving from its judgment.[44]  "A Rule 59(e) application is not an avenue for the moving party to raise new arguments or to rehash arguments already decided by the Court."[45]    And such motion will be denied unless the Court has "overlooked a controlling precedent or legal principles," or "has misapprehended the law or facts such as would affect the outcome of the decision" challenged.[46]

## PARTIES' CONTENTIONS

As to Plaintiffs' prayer of punitive damages, Defendants argue reconsideration is warranted because the Court overlooked that the matter was ripe for consideration even in the absence of a pending motion for summary judgment as to the medical negligence claim.[47]  They cite to case law that permits such consideration.[48]  They further argue the Court gave Plaintiffs time through oral arguments and supplemental

---

[43] *Kostyshyn v. Comm'rs of Town of Bellefonte*, 2007 WL 1241875, at \*1 (Del. Super. Apr. 27, 2007).

[44] *See Hessler, Inc. v. Farrell*, 260 A.2d 701, 702 (Del. 1969) ("manifest purpose of all Rule 59 motions is to afford the Trial Court an opportunity to correct errors").

[45] *Maravilla-Diego v. MBM Construction II, LLC*, 2015 WL 5055955, at \*1 (Del. Super. Aug. 27, 2015) (citing cases).

[46] *Cummings v. Jimmy's Grille, Inc.*, 2000 WL 1211167, at \*2 (Del. Super. Aug. 9, 2000).

[47] *See generally* Defs.' MFR.

[48] *See id.* at 2 (citing *Pattanayak v. Khan*, 2005 WL 2660080 (Del. Super. Sept. 12, 2005)).

filings to present their argument which also demonstrates the matter should have been summarily decided in their favor.[49]

Plaintiffs maintain the Court's ruling was appropriate on the issue of punitive damages.[50] They argue the pattern of reporting and the alleged failure to properly address B.M.'s medical issues demonstrate institutional culpability against Nemours.[51] During oral arguments on May 30, 2024, for the first time, Plaintiffs suggested Dr. Amoroso, as the primary care provider, was acting "in a managerial capacity" and that her actions could therefore justify institutional liability for punitive damages.[52] The Court gave Plaintiffs an opportunity to supplement the record with authority to support this novel argument.[53] Upon review of the record, Defendants meet Rule 59(e)'s burden and establish the Court should reconsider its judgment. The matter is ripe for re-consideration.

## DISCUSSION

Punitive damages in medical negligence cases are governed by 18 *Del. C.* § 6855, which states, "punitive damages may be awarded only if it is found that the injury complained of was maliciously intended or was the result of willful or wanton

---

[49] *Id.* at 5.

[50] *See* Response to Def's R. 59(e) Motion for Reargument, D.I. 421 ("Pls.' Resp. to MFR").

[51] Pls.' Resp. to PSJ at 9–10; Pls.' Resp. to MFR at 2–6.

[52] Transcript of Motion Hearing on May 30, 2024 at 99, D.I. 409.

[53] *See* Pls.' Punitive Damages Memo.

10

misconduct by the health-care provider."[54]  It is well established that "very high levels of inappropriate actions are required to warrant" a submission of punitive damages to the trier-of-fact.[55]  Mere statements or allegations of willful, wanton, or reckless misconduct, absent more, are insufficient.[56]  Punitive damage is an extraordinary remedy that requires clear evidence of outrageous conduct.[57]  "The primary purpose of punitive damages is to deter defendants rather than compensate plaintiffs."[58]

In response to Defendants' Motion for Partial Summary Judgment, Plaintiffs maintained Defendants acted with malice and willful misconduct in their treatment of B.M. and in making their reports to DFS.[59]  At the Court's request to better understand Plaintiffs' pursuit of punitive damages, Plaintiffs filed a supplement "in support of punitive damages under *respondeat superior* against Nemours Institution, and individual agents of Nemours."[60]  In it, Plaintiffs submitted fifty-six (56) instances involving Individual Defendants and five other team members "offered to

---

[54] 18 *Del. C.* § 6855.

[55] *Bristow v. Nemours Found.*, 2023 WL 4994093, at *6 (Del. Super. July 24, 2023) (quoting *Vick v. Khan*, 2019 WL 2177114, at *8 (Del. Super. May 17, 2019)).

[56] *See id.*

[57] *See id.*

[58] *Pattanayak*, 2005 WL 2660080, at *4 (citing *Eby v. Thompson*, 2005 WL 486850, at *3 (Del. Super. Mar. 2, 2005)).

[59] *See* Pls.' Resp. to PSJ at 2.

[60] *Id.*

support Plaintiffs' *respondeat superior* claims for punitive damages against [Nemours]."[61] They argue:

> "Indeed, what motive could qualify as more evil than Nemours' defendants and Team members filing five false DFS complaints instead of addressing Mom's legitimate constipation complaints over four months in spite of the seriousness of BM's pathetic condition, to retaliate against Mom and/or coverup their collective neglect of BM?"[62]

At the outset, Plaintiffs have maintained that their request of punitive damages are against Nemours, as the institution, and Dr. Amoroso and Kelly, as "agents of Nemours." For the following reasons, Plaintiffs cannot establish a basis for their claims as to Nemours.

## A. PLAINTIFFS FAIL TO ESTABLISH A BASIS FOR PUNITIVE DAMAGES AS TO NEMOURS.

To impose punitive damages against an institution for the conduct of their employees, Delaware Courts adopt the Restatement (Second) of Torts.[63] Section 909 of the Restatement provides that:

> "[p]unitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if: (a) the principal or a managerial agent authorized the doing and the manner of the act, or (b) the agent was unfit and the principal or a managerial agent was reckless in employing or retaining him, or (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or

---

[61] *See* Pls.' Punitive Damages Memo at 1.

[62] *Id.* at 7.

[63] *Ramada Inns, Inc. v. Dow Jones & Co.*, 1988 WL 15825, at *1 (Del. Super. Feb. 9, 1988).

(d) the principal or a managerial agent of the principal ratified or approved the act."[64]

To establish a claim for punitive damages against Nemours as an institution, Plaintiffs would need to show not only that the Individual Defendants made a bad decision that was willful or wanton within the scope of employment, but also that Nemours' conduct fits into at least one part of the four-prong test under § 909 of the Restatement (Second) of Torts.[65]

Here, Plaintiffs have not demonstrated that Nemours knew of, authorized, ratified, or approved any conduct by Dr. Amoroso or Kelly. Nor do they address how the either was unfit or recklessly employed. The remaining avenue would be under the "managerial capacity" prong. This Court has held in *Taylor v. Christiana Care* that "managerial capacity" depends on the "type of authority that the employer has given to the employee, [and] the amount of discretion that the employee has in what is done and how it is accomplished."[66]

Plaintiffs argue that the pattern of reporting and the alleged failure to properly address B.M.'s medical issues demonstrate institutional culpability.[67] This argument, however, conflates the actions of individual employees with institutional

---

[64] RESTATEMENT (SECOND) OF TORTS § 909 (AM. L. INST. 1979).

[65] *Taylor v. Christiana Care Health Servs., Inc.*, 2012 WL 1415779, at *2 (Del. Super. Feb. 27, 2012).

[66] *Id.* (quoting *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 543 (1999)).

[67] Pls.' Resp. to PSJ at 9–10; Pls.' Resp. to MFR at 2–6.

conduct. Without specific evidence of wrongdoing at the institutional level, this argument fails to meet the legal standard for punitive damages against Nemours.

Notably, for the first time during oral arguments on May 30, 2024, Plaintiffs contended that Dr. Amoroso, merely by virtue of being a primary care provider, was acting "in a managerial capacity," and her actions could therefore justify institutional liability for punitive damages.[68] The Court gave Plaintiffs an opportunity to supplement the record with authority to support this novel argument.[69] Plaintiffs' submissions are unpersuasive.

Plaintiffs' interpretation is that "(1) Delaware Courts find actual agency sufficient to affix punitive damages liability under *respondeat superior* theory; (2) the Restatement 2d Torts §909 permits either actual agency or 'managerial capacity' for affixing vicarious liability of punitive damages against hospital employers; and (3) Delaware cases recognize the disjunctive nature of the actual agency and 'managerial capacity' under Restatement 909 to affix punitive damages liability vicariously for medical negligence."[70] These arguments, while creative, are wholly without merit.

---

[68] Transcript of Motion Hearing on May 30 2024 at 99, D.I. 409.

[69] *See* Pls.' Punitive Damages Memo.

[70] *Id.* at 5–6.

While Dr. Amoroso held significant responsibility as B.M.'s primary care provider, this clinical role does not equate to the type of institutional authority typically required for punitive damages liability. "Managerial capacity" in this context generally refers to employees at the top of the managerial hierarchy or those considered "a principal or managerial agent" by the institution.[71] Despite having decision-making authority regarding patient care, the record lacks evidence that Dr. Amoroso possessed the requisite institutional authority to render Nemours liable for punitive damages based on her actions alone.

Alternatively, Plaintiffs argue that the "managerial capacity" requirement is not the law in Delaware.[72] Arguing instead that *Jardel* is the proper authority,[73] requiring only an *agency* relationship, Plaintiffs maintain they should be permitted to present a punitive damage claim to the jury. This reliance is misplaced.

"Under the 'well entrenched doctrine of agency law' known as *respondeat superior*, '[a]n employer is subject to liability for torts committed by employees while acting within the scope of their employment.'"[74] But to impose the institution

---

[71] *See James v. Williams*, 2017 WL 5900953, at *4 (Del. Super. Nov. 30, 2017).

[72] On January 22, 2025, at the decisional hearing on the parties' various motions, Mr. Srivatsan clarified that during oral arguments on Defendants' Motion for Partial Summary Judgment in May 2024, his argument that an attending physician is acting in a "managerial capacity" was made only in the alternative.

[73] *Jardel Co. v. Hughes*, 523 A.2d 518 (Del. 1987).

[74] *Verrastro v. Bayhospitalists, LLC*, 208 A.3d 720, 724 (Del. 2019) (citation omitted).

15

liable of *punitive damages* for the conduct of its employees, Delaware courts adopt the four-part test under Section 909 of the Restatement (Second) of Torts.[75] Plaintiffs' request to forgo § 909's test is counter to the law.

Moreover, *Jardel* involved a premises liability claim where the parent corporation "exercised direct operational control in several management areas" through its vice president's approval of security decisions.[76] Our Supreme Court's analysis in *Jardel* reinforces, rather than eliminates, the requirement of managerial involvement. Unlike the present case, the corporate liability in *Jardel* stemmed from direct involvement of high-level management in operational decisions that led to the plaintiff's injury.[77] The Court further emphasized that "[p]unitive damages are fundamentally different from compensatory damages both in purpose and formulation[]"[78] and "[the] penal aspect and public policy considerations which justify the imposition of punitive damages require that they be imposed only after a close examination of whether the defendant's conduct is 'outrageous,' because of 'evil motive' or 'reckless indifference to the rights of others.'"[79] Notably, the Court

---

[75] *Ramada Inns, Inc.*, 1988 WL 15825, at *1.

[76] *Jardel*, 523 A.2d at 526.

[77] *Id.*

[78] *Id.* at 528.

[79] *Id.* at 529 (quoting Restatement (Second) of Torts § 908, comment b (1979)).

ultimately found "complete absence of any deterrent basis for the imposition of punitive damage" and reversed that portion of judgment.[80]

Plaintiffs fail to establish the "managerial capacity" prong to impose punitive damages onto Nemours. The institution, and Dr. Amoroso and Kelly—"as agents for Nemours"—are entitled to summary judgment as a matter of law.

## B. PLAINTIFFS FAIL TO ESTABLISH A BASIS FOR PUNITIVE DAMAGES AS TO THE INDIVIDUAL DEFENDANTS.

Assuming Plaintiffs appear to also seek to pursue punitive damages directly against Dr. Amoroso and Kelly in their individual capacities, for completeness only, the Court addresses the alleged fifty-six (56) instances as to these Individual Defendants.

As to Dr. Amoroso, the allegations of an "I don't care attitude" include that she filed two false DFS complaints. The "evil" conduct is therefore as to the reporting, which falls under the immunity provisions of CAPA, previously decided by this Court. That leaves one allegation that Dr. Amoroso failed to "order imaging despite BM's lack of improvement and suffering with constipation and fecal impaction, as recommended by Dr. Rappaport 5 to 10 weeks earlier."[81] This alleged conduct is insufficient to rise to the level of willful and wanton conduct.

---

[80] *Id.* at 527–31.

[81] *See* Pls.' Punitive Damages Memo at 2.

As to Kelly, Plaintiffs allege a handful of instances.[82] Although most involve the DFS reports and alleged retaliation against Plaintiff Milton (Mom) for having filed an insurance complaint against Kelly,[83] some allegations are related to medical treatment.[84] Yet, there is no evidence that injury to B.M., if any, was maliciously intended or the result of willful or wanton misconduct by the individual health-care provider. The Individual Defendants are also therefore entitled to summary judgment as a matter of law.

## CONCLUSION

Defendants meet their burden of establishing a basis for relief under Rule 59. Accordingly, the Motion for Reargument is **GRANTED.** Having considered the record, the arguments of the parties, and all supplemental materials, Defendants establish no genuine issue of material fact exists to support a claim for punitive damages as to Defendants. Thus, they are entitled to summary judgment as a matter

---

[82] *Id.* at 3.

[83] *Id.*

[84] *Id.* ("when…presented with numerous red flags of BM's chronic constipation…[Kelly] admitted she suspected fecal impaction but failed to promptly champion her treatment and investigation;…failing to order an x-ray /imaging or enema…not ordering imaging any time after BM's admit under Dr. David Rappaport despite BM's lack of improvement and suffering with constipation and fecal impaction…; by not coordinating with Team members and attendings…although she had a duty to focus on patient-centered care which was part of the reason for the insurance company investigation;…by not informing the team members about the seriousness of BM's constipation which caused a wasted…appointment…and a wasted hospital admit….").

of law and Defendants' Motion for Partial Summary Judgment on this issue is **GRANTED.**  The matter is hereby reassigned to Judge Butler.

      **IT IS SO ORDERED.**

/s/ Vivian L. Medinilla
Vivian L. Medinilla
Judge
